# 22-1687

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

GORDON SPRINGS,

*Plaintiff-Appellant,*

-against-

CITY OF NEW YORK, CHARLES SWIFT, INDIVIDUALLY AND IN HIS RESPECTIVE CAPACITY AS A MEMBER OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, PETER GRILLO, INDIVIDUALLY AND IN HIS RESPECTIVE CAPACITY AS A MEMBER OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK FIRE COMMISSIONER DANIEL A. NIGRO, INDIVIDUALLY AND IN HIS RESPECTIVE CAPACITY AS A MEMBER OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, PEDRO ARISTY, INDIVIDUALLY AND IN HIS RESPECTIVE CAPACITY AS A MEMBER OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, LIEUTENANT EDWARD VREELAND, INDIVIDUALLY AND IN HIS RESPECTIVE CAPACITY AS A MEMBER OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK,

*Defendants-Appellees.*

*On appeal from Order and Judgment of the U.S. District Court for the Southern District of New York Case No. 18-cv-12008*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

**MCCALLION & ASSOCIATES, LLP**
100 Park Avenue, 16th Floor
New York, New York 10017
(646) 366-0884
kfm@mccallionlaw.com
*Attorneys for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT............................................................................................................ 2

> POINT I
>
> JUDGE WALTER'S UNEXPLAINED SUA SPONTE ORDER OF
> SEPARATE TRIALS WAS AN ABUSE OF DISCRETION, AND HIS
> REFUSAL TO GRANT PLAINTIFF'S COUNSEL ONLY A ONE
> DAY ADJOURNMENT OF THE TRIAL AGAINST THE
> INDIVIDUAL DEFENDANTS COMPOUNDED THE SEVERE
> PREJUDICE TO THE PLAINTIFF RESULTING FROM THIS
> RULING ........................................................................................................ 2
>
> A.    Judge Walter's Unexplained Decision to Hold Separate Trials on
>        Virtually the Eve of Trial Was a Per Se Abuse of Discretion in
>        Light of Judge Nathan's Prior Well-Reasoned Decision to the
>        Contrary ..................................................................................... 2
>
> B.    Judge Walter's Refusal to Grant Plaintiff Any Meaningful
>        Continuance To Prepare for a Bifurcated Trial Against the
>        Individual Defendants Was a Further Abuse of Discretion,
>        Compounding the Undue Prejudice to Plaintiff ...................................... 5
>
> POINT II
>
> THE COURT'S BARRAGE OF CRITICISM AND DEMEANING
> COMMENTS ABOUT PLAINTIFF IN THE JURY'S PRESENCE
> WERE SEVERELY PREJUDICIAL AND DEPRIVED PLAINTIFF
> OF A FAIR TRIAL ........................................................................................ 7

CONCLUSION...................................................................................................... 15

CERTIFICATE OF COMPLIANCE.......................................................................... 16

i

# TABLE OF AUTHORITIES

## Cases

*Amato v. City of Saratoga Springs*,
170 F. 3d 311, 316, (2d Cir. 1999) ......................................................................3

*Anderson v. Great Lakes Dredge & Dock Co*.,
509 F.2d 1119, 1131 (2d Cir. 1974) ..................................................................10

*Bowers v. Navistar Int'l Transp. Corp*.,
1993 WL 159965, at *1 (S.D.N.Y. May 10, 1993) ............................................3

*Deskovic v. City of Peekskill*,
673 F. Supp. 2d 154, 166 (S.D.N.Y. 2009) .........................................................2

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*,
782 F.2d 329, 341–42 (2d Cir. 1986) .................................................................7

*Henderson v. City of New York*,
571 F. App'x 42 (2d Cir. 2014)..........................................................................10

*Kotler v. Jubert*,
986 F.3d 147 (2d Cir.) .......................................................................................14

*Moody v. CSX Transportation, Inc.,*
271 F. Supp. 3d 410 (W.D.N.Y. 2017)................................................................4

*Rivas v. Brattesani*,
94 F.3d 802, 808 (2d Cir. 1996) ........................................................................10

*Santa Maria v. Metro-N. Commuter R.R.,*
81 F.3d 265, 273 (2d Cir. 1996) ........................................................................10

*Smith v. Lightning Bolt Prods.*,
861 F. 2d 363, 370 (2d Cir. 1988) ......................................................................3

*United States v. Salameh*,
152 F.3d 88 (2d Cir. 1998) .................................................................................9

*United States v. Valenti,*
60 F.3d 941, 946 (2d Cir.1995) ............................................................................9

*Vichare v. AMBAC Inc.,*
106 F. 3d 457, 466 (2d Cir. 1996) ........................................................................3

## PRELIMINARY STATEMENT

Plaintiff-Appellant Gordon Springs submits this Reply Brief in further support of his appeal from: (a) the judgment entered in favor of Defendants following a jury trial (A. 1073); and (b) the District Court's (Judge Donald E. Walter) *sua sponte* ruling that there would be separate trials of plaintiff's claims against the City Defendants and those against the Individual Defendants. A. 24 and 448.

Defendants argue in their Opposition Brief that there was a rational basis for Judge Walter's decision to order separate trials, but Judge Walter himself provided no rationale for his decision (A. 24), despite his promise that he would issue a written decision as to why he was reversing Judge Alison J. Nathan's well-reasoned written decision on this issue. A. 254. Defendants, therefore, can only speculate as to what the basis was for Judge Walter's ruling, which is not a proper basis for an informed review by this Court.

Defendants also fail to come up with a credible explanation for Judge Walter's refusal to give Plaintiff's counsel only 48-hours to prepare for a severed trial against the Individual Defendants, effectively forcing Plaintiff's counsel to make the difficult decision to dismiss (without prejudice) Plaintiff's claims against the Individual Defendants and to try a severed case only against the City on the retaliation claims, without the benefit of having evidence of the underlying discriminatory conduct of the Individual Defendants before the jury.

1

In addition, the City Defendants' Brief fails in its attempt to minimize the prejudicial impact of the highly prejudicial and demeaning comments about Plaintiff made by the trial judge in the presence of the jury, which effectively denied him a fair trial.

**ARGUMENT**

I.  **JUDGE WALTER'S UNEXPLAINED SUA SPONTE ORDER OF SEPARATE TRIALS WAS AN ABUSE OF DISCRETION, AND HIS REFUSAL TO GRANT PLAINTIFF'S COUNSEL ONLY A ONE DAY ADJOUNMENT OF THE TRIAL AGAINST THE INDIVIDUAL DEFENDANTS COMPOUNDED THE SEVERE PREJUDICE TO THE PLAINTIFF RESULTING FROM THIS RULING**

    **A. Judge Walter's Unexplained Decision to Hold Separate Trials on Virtually the Eve of Trial Was a Per Se Abuse of Discretion in Light of Judge Nathan's Prior Well-Reasoned Decision to the Contrary.**

On August 21, 2019, Judge Nathan denied the City Defendants' motion for severance and for separate trials of plaintiff's retaliation claims against the City and his claims against the Individual Defendants. A. 254. Judge Nathan reasoned that Plaintiff's claims of harassment and retaliation for reporting the harassment are "logically related claims," such that joinder was proper and "severance unwarranted." Id., citing *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 166 (S.D.N.Y. 2009). Judge Nathan further found that "holding two separate trials in the same action would inconvenience the Court, Plaintiff, and witnesses…," and that a

2

unitary trial would present no undue prejudice to any party. Id., citing *Bowers v. Navistar Int'l Transp. Corp.*, 1993 WL 159965, at *1 (S.D.N.Y. May 10, 1993).

However, on November 11, 2019, the day before the trial was scheduled to begin, Judge Walter shockingly ordered separate trials, even though no such motion was pending, and the issue had already been decided by Judge Nathan in a written decision. A. 448. Judge Walter gave no reason for his surprise ruling, but promised to "issue an Order in due course …." Id. He never did so, and never presided over the trial of the case.

Since Defendants are as much in the dark regarding Judge Walter's reasons for ordering a bifurcated trial as anyone else, they merely cite to cases standing for the general principle that the holding of separate trials may be ordered to avoid prejudice, inconvenience, or inefficiency. Defendants' Brief at 19-20, citing, e.g., *Smith v. Lightning Bolt Prods.*, 861 F. 2d 363, 370 (2d Cir. 1988). However, Judge Nathan's prior decision had carefully analyzed all of these factors in reaching the conclusion that a unitary trial would *not* lead to undue prejudice, inconvenience, or inefficiency, and that indeed the opposite was true.

Defendants cite *Amato* v. *City of Saratoga Springs,* 170 F. 3d 311, 316 (2d Cir. 1999) for the proposition that bifurcation may be proper where "unrelated issues involving different parties" are present; they also cite *Vichare v. AMBAC Inc.,* 106 F. 3d 457, 466 (2d Cir. 1996), where bifurcation was held to be proper when widely

divergent issues involved different evidence. Here, however, the shocking and discriminatory actions taken by the Individual Defendants were so inextricably intertwined with Plaintiff's retaliation claim against the City Defendants that the trial judge who eventually presided over the trial against the City Defendants (Judge McMahon) found it necessary to permit Plaintiff to give at least some limited testimony – albeit insufficient – as to the actions taken by the Individual Defendants that led him to file the EEOC complaints triggering the retaliatory actions against him. The discriminatory actions of the Individual Defendants led to the filing of Plaintiff's EEOC complaints, and the filing of the EEOC complaints then led to the acts of unlawful retaliation against him. By precluding Plaintiff from fully present each of these steps in the factual chain leading up to the retaliation, Plaintiff was severely prejudiced.

Since it cannot be disputed that bifurcation and severance are "the exception, not the rule," *Moody v. CSX Transportation, Inc*., 271 F. Supp. 3d 410, 434 (W.D.N.Y. 2017), a bifurcation or severance order requires some explanation, if for no other reason than that it cannot be properly reviewed unless the judge making the ruling discloses his thought process in arriving at such a decision. Here, since the reviewing court – like the parties – are left guessing as to why Judge Walter made his decision, the most reasonable course of action is to set aside the bifurcation order and subsequent orders and judgments in this case and direct that a new non-

4

bifurcated trial be held. While Plaintiff's claims against the Individual Defendants is presently pending in New York State Supreme Court, the case is, upon information and belief, presently in a "suspended" status pending the outcome of this appeal. Therefore, if this Court directs that a non-bifurcated and non-severed case be reinstated in the District Court, Plaintiff's counsel in the state court action could simply discontinue the state court action against the Individual Defendants in favor of the reinstated claims in the District Court.

**B**. **Judge Walter's Refusal to Grant Plaintiff Any Meaningful Continuance To Prepare for a Bifurcated Trial Against the Individual Defendants Was a Further Abuse of Discretion, Compounding the Undue Prejudice to Plaintiff.**

During the pre-trial conference of November 11, 2019, when Judge Walter issued his bifurcation order of the trial scheduled to commence the following day, Plaintiff's counsel asked for a continuance base, in part, on the fact that the City had just dumped on him 750 pages of discover materials that needed to be reviewed, digested, and integrated into a reasonable trial strategy for a bifurcated case against the Individual Defendants that Plaintiff's counsel first heard about a couple of minutes earlier.

Given only a one-day "continuance" by Judge Walter, and faced with the near-impossible task of both reviewing voluminous discovery documents and preparing for a bifurcated trial against the Individual Defendants in only a 48-hour window, Plaintiff's counsel submitted – under extreme duress – a letter motion seeking

dismissal of the remaining federal claims against the Individual Defendants, which was granted. A. 445.

Defendants do not address Plaintiff's argument that the grant of only a one-day continuance, giving Plaintiff's counsel only 48-hours to prepare for the trial against the Individual Defendants, was a gross abuse of discretion by Judge Walter, leaving Plaintiff's counsel with the Hobson's choice of either going to trial without adequate preparation, or asking that the federal case against the Individual Defendants be dismissed, and then re-filing the state law claims against them in the New York courts. By bifurcating the case on the eve of trial and then refusing to grant Plaintiff's counsel the eminently reasonable request for a meaningful continuance to review discovery documents and to prepare for a reformulated trial, Judge Walter's abuse of discretion falls squarely into the *per se* category.

Wisely realizing that it is impossible to defend or explain away the indefensible, i.e., the one-day "continuance" granted by Judge Walter, Defendants choose to misinterpret Plaintiff's argument as one complaining about the time period that Plaintiff's counsel was given to prepare for the trial against the City Defendants. See Defendants' Brief at 23-24. Defendants irrelevantly note that the trial against the City Defendants dis not take place until July 2022, "more than two and one-half years after the severance order and the City's final discovery disclosures." Id.

To the extent that Defendants made reference to the one-day continuance of the trial against the Individual Defendants, they argue that this travesty of justice is "unreviewable" since Plaintiff's counsel dismissed those claims "voluntarily." Id. at 24. However, the more accurate characterization of Plaintiff's counsel's decision to file a motion withdrawing the federal claims against the Individual Defendants is that he figuratively had a gun being held to his head and there were only two bad options available to him, i.e., dismiss the claims against the Individual Defendants or rush into a trial unprepared. Either way, it was the Plaintiff who was being severely prejudiced. See *Dow Chem. Pac. Ltd v. Rascator Mar. S. A.*, 782 F. 2d 329, 341-42 (2d Cir. 1986) (an abuse of discretion is established when the denial of the adjournment was arbitrary, and it substantially impaired the presentation of the case).

## II. THE COURT'S BARRAGE OF CRITICISM AND DEMEANING COMMENTS ABOUT PLAINTIFF IN THE JURY'S PRESENCE WERE SEVERELY PREJUDICIAL AND DEPRIVED PLAINTIFF OF A FAIR TRIAL

During a pre-trial conference discussion regarding the scope if admissible evidence regarding Plaintiff's transfer to Engine Company 67 and events that transpired there, Judge McMahon cryptically stated: "Clearly the acts that happened at 67 are gone." A. 467. No in limine order was issued clarifying the permitted scope of Plaintiff's testimony regarding his transfer to Engine 67 or events that transpired there, although the thrust of the trial judge's comments as reflected in the transcript

7

of the pre-trial conference seemed to be that although Plaintiff could testify about the circumstances of his transfer to Engine 67, he could not testify as to events that transpired once he got there. A. 467.

One year later, on July 6, 2022, Plaintiff's counsel attempted in good faith to walk this tightrope by first questioning Plaintiff about his transfer to Engine 67, and then jumping over what happened during his tenure at Engine 67 by asking him why he left Engine 67. A. 73-74; A. 597-598. Defense counsel objected to the question and the trial court overruled the objection. Id. Plaintiff answered the question by referring to his feelings of "being isolated" and "shunned." Id.

The following day, Judge McMahon erroneously instructed the jury that Plaintiff had given "some testimony about things that occurred or may have occurred after the plaintiff was transferred to Engine 67." A. 617-618. This was an incorrect and distorted characterization as to what Plaintiff had testified to the day before. In his testimony, no reference was made – even remotely – to any of the eight incidents of alleged discrimination and harassment identified in Judge Hellerstein's Opinion & Order, dated June 26, 2020; see Special Appendix, at 9 of 17. All he testified to were his "feelings" upon leaving Engine 67, not any alleged discriminatory action that took place while he was there.

Even if Plaintiff's counsel's questioning of Plaintiff slightly strayed from the briefly sketched boundaries of Judge McMahon's off-the-cuff ruling one year

earlier, the trial court's "punishment" of Plaintiff and his counsel before the jury was all out of proportion to the "crime." Judge McMahon intentionally punished the Plaintiff by telling the jurors that another judge had dismissed other claims filed by Plaintiff in federal court. A. 617-618. This was intended to signal – and did signal – to the jury that some of Plaintiff's claims had already been dismissed by another federal judge, with the clear implication that those claims had been dismissed on the merits, when they were not. The prejudicial implication was that if another federal judge had already dismissed some of Plaintiff's claims, i.e., those relating to his tenure at Engine 67, then the jury should closely scrutinize his claims in the case before them since, more likely than not, they were equally bogus.

Judge McMahon's skewering of the Plaintiff and his counsel on the Engine 67 issue was part and parcel of the trial judge's demeaning treatment of Plaintiff throughout the trial, to the point where "the jurors [would have necessarily] been impressed with the trial judge's partiality to one side to the point that this became a factor in the determination of the jury." *United States v. Salameh*, 152 F. 3d 88 ((2d Cir. 1998), quoting *United States v. Valenti*, 60 F. 3d 941, 946 (2d Cir. 1995); see also, *Kotler v. Jubert*, 986 F. 3d 147 (2d Cir.), cert denied, 142 S. Ct. 598 (2021) (reviewing whether judge's behavior was so prejudicial that it denied a party a fair trial "in light of the record as a whole").

Here, as in *Anderson v. Great Lakes Dredge & Dock Co*., 509 F. 2d 1119, 1131 (2d Cir. 1974), the trial court intervention in the examination of the plaintiff was so "seriously prejudicial" that it evinced "a measure of hostility on the part of the court towards" one of the parties (in this case the Plaintiff). Here, unlike in *Henderson v. City of New York,* 571 F. App'x 42, 45 (2d Cir. 2014) there was no curative instruction given by the trial court, such as an instruction that the judge's admonishment of Plaintiff and/or his counsel throughout the trial should not be interpreted as reflecting a partiality in favor of one party over the other. In this case, the constant admonishments and interruptions of Plaintiff's testimony both on direct and cross-examination went far beyond the trial judge's comments and actions requiring reversal in *Rivas v. Brattesani*, 94 F. 3d 802, 808 (2d Cir. 1996) (finding an impression of judicial partisanship), or *Santa Maria v. Metro-N. Commuter R.R.,* 81 F. 3d 265, 273 (2d Cir. 1996) (finding of judicial antipathy far beyond judicial skepticism).

Specifically, Judge McMahon improperly lambasted Plaintiff in the presence of the jury for having the audacity to ask for clarification of a question that was posed to him:

> [Question by Plaintiff's Counsel]: So, Mr. Springs, at the time that your were – that you filed that complaint, you were on medical leave for approximately six months, correct?
>
> A. are you referring to the first time I went on –

THE COURT: Yes, he's referring to the first time. Don't play games with me. I will not have this He is asking you about October, the medical leave that you were on. Listen to the question; answer the question. I will not tolerate this from any witness. Answer the question.

Transcript of Jury Trial, 07/07/22, at 96-97; A. 620-621.

This demeaning outburst by the trial judge was totally unwarranted and highly prejudicial. No Plaintiff or any witness should be subjected to such a harsh dressing down in the presence of the jury for having asked for clarification of which one of the multiple leaves of absence he was being questioned about. Indeed, since Plaintiff was unclear as to which one he was being asked about, it was incumbent and totally proper for him to have asked for clarification. The questioning attorney would have simply said "yes" to his question (if he had been permitted to finish asking the question), and the court's interruption and erroneous suggestion that he was somehow evading the question by asking for clarification could only have signaled one thing to the jury: that the Plaintiff was stalling and evading answering the questions because he wanted to hide the truth from coming out.

Shortly thereafter, the court interrupted Plaintiff's cross-examination to tell the jury once again that the court's strong opinion was that Plaintiff was intentionally refusing to answer the questions posed to him, even though the question being posed by defense counsel was improper in that it required Plaintiff to do some mathematical time calculation comparing the length of time that he was

assigned to a firehouse to the time that he was on medical leave. A. 622-623

(emphasis added):

> Q. [by Defense Counsel]: OK, sir. So at the time that you were assigned to a firehouse and you were actually assigned, you had been on medical leave for a longer period of time than you had been assigned to a firehouse, isn't that correct?

> [Plaintiff's Counsel]: Objection, your Honor. Asked and answered.

> THE COURT: *It hasn't been answered. That's the problem. That's why it's being asked for the fourth time, because it hasn't been answered because your client refuses to answer the question. This is not a deposition. You're in my courtroom. I expect questions to be answered. Answer the question.*

A. 622-623 (emphasis added).

The trial court even inappropriately and prejudicially went so far as to dictate to

Plaintiff how he should answer a question on cross examination, going far beyond

the proper instruction that he answer "yes" or "no" to a question calling for and

which could be answered "yes" or "no." Instead, the court improperly interjected

herself into the cross-examination but answering the question being posed for him,

and not permitting him to answer for himself:

> Q. So is it a yes, sir, you were in a class with other probationary firefighters?

> A. Yes, after –

> THE COURT: *The answer is yes, there were others in the class with you. Next. That's what was asked.*

A. 625 (emphasis added).

The court then chastised Plaintiff (a lay witness) for not testifying to his

beliefs without also giving the basis for his belief that he should have been in a

shorter probationary class with more experienced firefighters. Such a fine

distinction would elude many an expert witness and attorneys, no less a firefighter

with little or no prior courtroom experience:

Q. Your belief –

THE COURT:  We want your belief. What's your belief?

Q. Yes or no?

A. I was told –

THE COURT: *Not the basis for your belief. Is it your belief, yes or no, that you should have been in a class with more experienced firefighters?*

THE WITNESS: Yes.

THE COURT: *Fine. No one asked you why that was your belief. They just asked if it was your belief. Answer the question you're asked.*

A. 625 (emphasis added).

Shortly thereafter, the trial judge interrupted the cross-examination of

Plaintiff again to interject herself  – as it must have by now appeared to the jury –

as a second defense attorney advocating for the City Defendants:

13

THE COURT: *Say yes or no.*

THE WITNESS: No.

THE COURT: No, you did not. OK. I told you your lawyer will have the opportunity to let you flesh out an answer if your lawyer thinks it's necessary. This man is asking you questions that can be answered yes or no. Answer them yes or no. Don't fight with him.

THE WITNESS: Yes, your Honor.

THE COURT: *Don't try to outsmart him. Just answer the question*.

A. 627-628 (emphasis added).

The cumulative effect of the trial court's plainly erroneous "curative"

instruction regarding Plaintiff's testimony relating to Engine Company 67, plus her

near constant badgering and haranguing of the Plaintiff on both his direct and

cross-examination, when viewed "in light of the record as a whole," *Kotler v.

Jubert*, 986 F. 3d 147 (2d Cir.), cert denied, 142 S. Ct. 598 (2021), was so

prejudicial that it denied Plaintiff a fair trial.

14

**CONCLUSION**

For all of the foregoing reasons, Judge Walter's severance order and the

judgment in favor of Defendants should be set aside and the case remanded for a

new trial, and for such other and further relief as this Court deems just and proper.


Dated: New York, New York
        April 14, 2023                    Respectfully submitted,

                                          McCALLION & ASSOCIATES LLP

                                          /s/ Kenneth F. McCallion
                                          _____
                                          By: Kenneth F. McCallion (KFM 1591)
                                          100 Park Avenue – 16th floor
                                          New York, New York 10017
                                          646-366-0884
                                          *Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT AND TYPEFACE AND TYPE-STYLE REQUIREMENTS

This document complies with the word limit of Local Rule 32.1(a)(4)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,341 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman with serifs and in 14-point font.

*/s/ Kenneth F. McCallion*

_____

Kenneth F. McCallion

16

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1 ) copy of the following:

APPELLANT'S REPLY BRIEF

was served upon Appellee's counsel via the Court's ECF System, as indicated, this 14th day of April, 2023, upon the following:

Date: April 14, 2023

/ s / Kenneth McCallion
_____
Kenneth McCallion
*Attorney for Appellant*